UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SAGAPONACK REALTY LLC,
SAGAPONACK VENTURES, LLC, MARC
GOLDMAN,

                Plaintiffs,               **MEMORANDUM AND ORDER**
                                                        2:17-cv-5277 (DRH)(SIL)

  – against –

THE VILLAGE OF SAGAPONACK,
DONALD LOUCHHEIM, LEE FOSTER,
WILLIAM BARBOUR, LISA DURYEA
THAYER, JOY SIEGER,

                Defendants,

  – against –

MH SAGAPONACK HOLDINGS LLC,
MICHAEL HIRTENSTEIN,

                Proposed Intervenor Defendants.

-------------------------------------------------------X

**APPEARANCES**

**OVED & OVED LLP**
Attorneys for Plaintiffs
401 Greenwich Street
New York, NY 10013
By:    Darren Oved, Esq.
          Terrence Ariel Oved, Esq.
          Aaron Jason Solomon, Esq.

**SOKOLOFF STERN LLP**
Attorney for Defendants
179 Westbury Ave.
Carle Place, NY 11514
By:    Steven C. Stern, Esq.
          Alexander Joseph Eleftherakis, Eq.

**GANFER & SHORE LLP**
Attorney for Proposed Intervenor Defendants
360 Lexington Ave., 14th Floor
New York, NY 10017
By:   Justin R. Bonanno, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiffs Sagaponack Realty LLC ("Realty"), Sagaponack Ventures, LLC ("Ventures"), and Marc Goldman ("Goldman") (collectively, "Plaintiffs"), brought this action against Defendants the Village of Sagaponack ("Village"), Donald Louchheim, Lee Foster, William Barbour, Lisa Duryea Thayer, and Joy Seiger (collectively, "Defendants") seeking damages "resulting from [Defendants] impending approval of an unauthorized subdivision application" and an injunction enjoining the Defendants from granting or otherwise proceeding" upon the allegedly unauthorized subdivision application.  (Compl. [DE 1] ¶ 1.)  In addition, MH Sagaponack Holdings LLC, Michael Hirtenstein ("Hirtenstein"), and MB Sagaponack Holdings (collectively, "Proposed Intervenor Defendants") have moved to intervene and dismiss the action.  Defendants brought the instant motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim.  For the reasons discussed below, Defendants' motion is granted and the case is dismissed.  Proposed Intervenor Defendants' motion to intervene and dismiss is denied as moot.

## BACKGROUND

The following relevant facts come from the Complaint, except where otherwise stated, and are assumed true for purposes of this motion.

In or about 2000, Plaintiff Goldman purchased a large tract of oceanfront land located at 451 Daniels Lane in Sagaponack, NY (the "Property") through his wholly-owned entity,

**GANFER & SHORE LLP**
Attorney for Proposed Intervenor Defendants
360 Lexington Ave., 14th Floor
New York, NY 10017
By:   Justin R. Bonanno, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiffs Sagaponack Realty LLC ("Realty"), Sagaponack Ventures, LLC ("Ventures"), and Marc Goldman ("Goldman") (collectively, "Plaintiffs"), brought this action against Defendants the Village of Sagaponack ("Village"), Donald Louchheim, Lee Foster, William Barbour, Lisa Duryea Thayer, and Joy Seiger (collectively, "Defendants") seeking damages "resulting from [Defendants] impending approval of an unauthorized subdivision application" and an injunction enjoining the Defendants from granting or otherwise proceeding" upon the allegedly unauthorized subdivision application.  (Compl. [DE 1] ¶ 1.)  In addition, MH Sagaponack Holdings LLC, Michael Hirtenstein ("Hirtenstein"), and MB Sagaponack Holdings (collectively, "Proposed Intervenor Defendants") have moved to intervene and dismiss the action.  Defendants brought the instant motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim.  For the reasons discussed below, Defendants' motion is granted and the case is dismissed.  Proposed Intervenor Defendants' motion to intervene and dismiss is denied as moot.

## BACKGROUND

The following relevant facts come from the Complaint, except where otherwise stated, and are assumed true for purposes of this motion.

In or about 2000, Plaintiff Goldman purchased a large tract of oceanfront land located at 451 Daniels Lane in Sagaponack, NY (the "Property") through his wholly-owned entity,

Ventures. (*Id.* ¶ 16.) Plaintiffs sought to develop the Property into four single-family residences, three of which would be oceanfront dwellings (the "Original Subdivision Plan"). (*Id.* ¶ 17.) As part of this subdivision plan, the development rights for a significant portion of the Property would be granted by conservation easement to the Peconic Land Trust to remain farmland. (*Id.* ¶ 18.)

Without ever listing the property for sale, Hirtenstein and Milton Berlinski ("Berlinksi") each approached Plaintiff Goldman to purchase one of the potential oceanfront plots. (*Id.* ¶ 19.) In furtherance thereof, Berlinski founded MB Holdings LLC ("MB"), and Hirtenstein founded MH Holdings LLC ("MH"). (*Id.* ¶ 20.) Together with Ventures, the three solely-owned entities formed SRLLC, with Ventures as the sole managing member. (*Id.* ¶ 29.) On March 21, 2005, MB, MH, and SRLLC executed an operating agreement ("Agreement") under which Ventures transferred ownership of the Property to SRLLC. (*Id.* ¶¶ 21–22.) Also pursuant to this Agreement, MB and MH each provided SRLLC with $15,000,000. (*Id.* ¶ 23.) Under the Agreement, Berlinski, Hirtenstein, and Plaintiff Goldman were each given the right to develop one of the oceanfront plots, while Goldman also retained the right to develop the fourth plot and to farm the balance of the Property. (*Id.* ¶ 25.) The SRLLC Agreement provided that if the Original Subdivision Plan was not approved within a four-year period (ending on March 21, 2009), then the MB and MH interests in SRLLC "would be worth considerably less than Venture's interest, if anything at all." (*Id.* ¶ 28.) On December 27, 2006, the parties entered into an amendment to the Agreement, extending the subdivision deadline to September 21, 2009. (*Id.* ¶ 34.)

In or about February 2007, Ventures, on behalf of SRLLC, filed a subdivision application for the Property with Defendants. (*Id.* ¶ 36.) Defendants declined to approve the application

unless SRLLC agreed to implement several restrictions on Plaintiff Goldman's waterfront plot, as well as on the residential portion of the single non-waterfront plot, which "significantly reduced the building area of both of Ventures/Goldman's lots." (*Id.* ¶ 37.) In light of these restrictions, Ventures requested that Hirtenstein and Berlinski agree to equally share the burden of the encroachment upon Plaintiff Goldman's plot by shifting the boundary lines of the other two plots. (*Id.* ¶ 39.) According to Plaintiff Goldman, Hirtenstein and Berlinski refused to consent to this request. (*Id.* ¶ 40.)

In or about 2008, Plaintiff Ventures commenced a federal action against MH and MB in the Southern District of New York (Case No. 08-cv-10530). (*Id.* ¶ 41.) After a bench trial, Judge Hellerstein determined that MB and MH Holdings were not required to bear part of the boundary restrictions, and stated that the Village's conditions of approval affecting development on the Property "[e]ssentially . . . express[ed] that which was already inherent in the setbacks that exited on the land to begin with." (Transcript of Oral Argument at 22, *Sagaponack Ventures, LLC v. MB Sagaponack Holdings LLC*, (May 16, 2011) (No. 08-10520).) In a later decision dismissing a counterclaim, Judge Hellerstein concluded that "[t]he parties simply will have to cooperate with one another or, failing such cooperation, pursue remedies under Delaware law regarding an impasse among partners." *Sagaponack Ventures LLC v. MB Sagaponack Holdings, LLC*, 2011 WL 13176073, at *2 (S.D.N.Y. June 1, 2011).

In May 2013, Goldman filed another subdivision application, but later withdrew it due to an alleged failure by MB and MH to timely reimburse Ventures for the expense in drafting and submitting the application. (Compl. ¶ 48.) Thereafter, SRLLC leased a portion of the Property to Venture and filed a site plan application (the "2013 Site Plan Application") to develop Venture's portions of the property. (*Id.* ¶ 49.) In 2014, Defendants rejected the 2013 Site Plan

Application. (*Id.* ¶ 51.) Plaintiffs then filed an Article 78 Application with respect to Defendants' rejection, which was denied and then appealed to the Second Department. (*Id.* ¶ 52.) That appeal is *sub judice*. (*Id.*)

On or about August 13, 2016, Plaintiffs filed another site plan application (the "2016 Site Plan Application". (*Id.* ¶ 53.) Prior to allowing the application to proceed, Defendants required Plaintiffs to prove by attorney opinion and sworn affidavit, that Plaintiffs were authorized to file the latest application. (*Id.* ¶ 54.) Defendants ultimately rejected the application on two bases. First, that Plaintiffs were prohibited from proceeding with the application while the appeal of the 2013 Site Plan Application was still pending. (*Id.* ¶ 60.) And second, that the 2016 Site Plan Application would reconfigure the map of the property previously approved by the Peconic Land Trust for conservation purposes. (*Id.* ¶ 63.) Defendants mandated that a representative of Peconic Land Trust personally testify before Defendants that Peconic Land Trust approves of the proposed changes to the Map. (*Id.*) Plaintiffs concede that they were unable to bring a member of Peconic Land Trusts to testify before Defendants because of two "working session" adjournments, which led to the full rejection of their application. (*Id.* ¶ 65.)

On or about November 10, 2016, MB and MH filed a joint subdivision application (the "2016 Subdivision Application") without Plaintiffs' knowledge or consent. (*Id.* ¶ 71.) In response, Plaintiffs filed a letter with Defendants on November 28, 2016, requesting that Defendants disregard the 2016 Subdivision Application. (*Id.* ¶ 73.) At the December 20, 2016 meeting, Defendants noted that the determination as to the proper applicant was beyond their jurisdiction, and they would simply consider the Application before them. (*Id.* ¶ 75.) Defendants conducted a public hearing on the application on May 8, 2017, and are set to have a final public hearing on September 11, 2018. (*Id.* ¶ 78.)

Plaintiffs filed this action on September 8, 2017. On December 15, 2017, MB and Berlinski moved to intervene and dismiss. On January 8, 2018, Defendants brought the instant motion to dismiss.

## LEGAL STANDARD

### I. Motion to Dismiss Pursuant to Rule 12(b)(1)

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

### II. Motion to Dismiss Pursuant to Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

# DISCUSSION

I. *The Parties' Arguments*

    a. Plaintiffs' Claims

Plaintiffs assert two causes of action. First, Plaintiffs seek a declaratory judgment that: (i) Plaintiff Ventures is the only member of SRLLC entitled to file subdivision applications and site plan applications on SRLLC's behalf; (ii) Berlinski was not authorized to file the 2016 Subdivision Application; and (iii) the 2016 Subdivision Application must be rejected by Defendants. (Compl. ¶ 94.) Second, Plaintiffs claim that Defendants violated § 1983 by: (i) a taking, through Defendants' imminent approval of the 2016 Subdivision Application; and (ii) disparate treatment, through Defendants' treatment of Plaintiffs' site plan applications as compared with their treatment of the 2016 Subdivision Application. (*Id.* ¶¶ 95–107.) Plaintiffs seek damages of $50,000,000.00 and a permanent injunction enjoining Defendants from proceeding upon the 2016 Subdivision Application. (*Id.* at 20.)

    b. The Motion to Dismiss

Defendants argue that Plaintiffs lack Article III standing for their declaratory judgment claim, and that their Takings and Equal Protection claims are not ripe for review unless and until there is a final decision on the underlying land use applications. (Mem. in Supp. [DE 41] at 1.) Specifically, Defendants aver that Plaintiffs' takings claim "fails out of the box" as the Village has not taken any property, while the Equal Protection claim is a "nonstarter" given that they allege differential treatment of the same applicant (SRLLC) for different types of applications. (*Id.*) Finally, Defendants insist that all claims against the individual board members in their official capacities should be dismissed because they are redundant of the claims against the

Village, and the claims against the individual boards members in their individual capacities should be dismissed based on qualified immunity. (*Id.*)

II. *The Motion to Dismiss Pursuant to Rule 12(b)(1) is Granted*

    a. Standing: Declaratory Judgment Claim

        i. Legal Standard

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 provides in relevant part that "in a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." § 2201(a).

The DJA is "procedural only" and "does not create an independent cause of action." *Chevron Corp v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007)); *see also Hanson v. Wyatt*, 552 F.3d 1148, 1157 (10th Cir. 2008) (explaining that the DJA "does not create substantive rights" (internal quotation marks omitted)). Thus, where an act "does not provide the legal predicate, the DJA cannot expand the statute's authority by doing so." *Chevron*, 667 F.3d at 245. Stated another way, "the DJA cannot create legal rights that do not otherwise exist[.]" *Id.*

To determine whether there is an "actual controversy" such that declaratory judgment is appropriate, the Court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *accord Duane Read, Inc. v. St. Paul*

*Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005); *see also Stoncor Group, Inc. v. Peerless Insurance Co.*, 2018 WL 3869892, at *4 (S.D.N.Y. Aug. 15, 2018) (quoting the same).

      ii. The Motion to Dismiss the Declaratory Judgment for Lack of Standing is Granted

As described above, Plaintiffs ask this Court to issue a judgment declaring that: (i) Plaintiff Ventures is the only member of SRLLC entitled to file subdivision applications and site plan applications on SRLLC's behalf; (ii) Berlinski was not authorized to file the 2016 Subdivision Application; and (iii) the 2016 Subdivision Application must be rejected by Defendants. (Compl. ¶ 94.) All of these requests appear to be a thinly veiled attempt by Plaintiffs to re-litigate the issues that were before Judge Hellerstein of the Southern District of New York in Case No. 08-cv-10530. Moreover, the first two requests in particular involve the interest of other parties—not the Village—and thus this Court does not have jurisdiction to issue such a declaratory judgment in a case between Plaintiffs and the Village. *See Md. Cas. Co.*, 312 U.S. at 273. Based on the facts alleged, this Court finds that there is no case or controversy between *these parties* that warrants this Court issuing a declaratory judgment regarding who is entitled to file applications on behalf of SRLLC. *See id.*

Even if the Court allowed MH and Hirtenstein to intervene, and required Plaintiffs to add Berlinski as a party, the Court still would not entertain Plaintiffs' request for a declaratory judgment deciding the rights of individuals and entities that have already been considered in an earlier district court case. *See Sagaponack Ventures LLC*, 2011 WL 13176073, at *2. Furthermore, as the Court has not and cannot decide who is entitled to file applications on behalf of SLLC, the Court may not enjoin Defendants from approving the 2016 Subdivision Application.

While Defendants ask the Court to dismiss Plaintiffs' declaratory judgment claim for lack of standing, the Court also dismisses the claim for lack of subject matter jurisdiction in view of this Court's dismissal of all of Plaintiffs' federal claims below. As a final note, this Court reiterates Judge Hellerstein's wise words, in hopes that the Parties will not ignore them now that they have been stated by two Federal District Courts: "[t]he parties simply will have to cooperate with one another or, failing such cooperation, pursue remedies under Delaware law regarding an impasse among partners." *Sagaponack*, 2011 WL 13176073, at *2.

    b. Ripeness: Takings Claim

        i. Legal Standard

In order for a District Court to have subject matter jurisdiction over a cause of action, it must be ripe, which is to say that "it must present a real, substantial controversy, not merely a hypothetical question." *Neroni v. Zayas*, 663 F. App'x. 51, 53 (2d Cir. 2016) (quoting *Nat'l Org. for Marriage v. Walsh*, 714 F.3d 682, 687 (2d. Cir. 2013)) (internal quotation marks omitted). "A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nat'l Org.*, 714 F.3d at 687 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)).

The Second Circuit has instructed that "to test the ripeness of a constitutional takings claim," the court should consult *William County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 511 (2d Cir. 2014). In *William County*, "a plaintiff owner of a tract of land sued a Tennessee regional planning commission alleging that the commission's application of various zoning laws and regulations to the plaintiff's property amounted to an unconstitutional 'taking' under the Fifth Amendment." *Id.* (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir.

2002)). The Supreme Court found that the claim was not ripe, holding that "a plaintiff alleging a Fifth Amendment taking of a property interest must . . . show that (1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure." *Kurtz*, 758 F. 3d at 511–12 (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F. 3d 83, 88 (2d Cir. 2002)); *see also Fernandes v. Moran*, 2018 WL 2103206, at *9 (E.D.N.Y. May 7, 2018) (quoting the same). As to prong one, a final decision for a zoning application is "when a development plan has been submitted, considered, and rejected by the governmental entity with the power to implement zoning regulations." *24 Franklin Ave. R.E. Corp. v. Heaship*, 2017 WL 1194702, at *8 (S.D.N.Y. March 30, 2017) (quoting *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008). "Even if a plan has been submitted and rejected . . . a claim is not ripe until the property owner submit[s] at least one meaningful application for a variance." *24 Franklin Ave*, 2017 WL 1194702, at *8 (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005)). Additionally, as delineated in the second prong of the *William County* test, a plaintiff is also required to seek compensation via state procedures if such procedures are available. *Fernandes*, 2018 WL 2103206, at *10 (quoting *Viteritti v. Inv. Vill. of Bayville*, 831 F. Supp. 2d 583, 591 (E.D.N.Y. 2011)).

      ii. The Motion to Dismiss Plaintiffs' Takings Claim is Granted

Applying the case law to the facts at bar, Plaintiffs have clearly failed to allege a Fifth Amendment Taking. Plaintiffs' assertions to the contrary are unavailing; even a cursory review of the robust precedent on this question demonstrates that there has been no "final decision" on the matter in light of the undisputed fact that Defendants' have not issued any sort of decision on the 2016 Subdivision Application. In fact, according to Plaintiffs' own allegations, Defendants

have not even finished holding public hearings on such Application. Even if Defendants do approve the Application, Plaintiffs are still numerous stages away from being able to assert a Fifth Amendment claim because they have to seek compensation under state procedures for the 2016 Subdivision Application, and/or apply for a variance for their own application. Accordingly, Defendants' motion to dismiss Plaintiffs' Fifth Amendment takings claim for lack of subject matter jurisdiction is granted.

   III.   *The Motion to Dismiss Plaintiffs' Disparate Treatment Pursuant to Rule 12(b)(6) is Granted*

   a. Legal Standard

To state a claim for disparate treatment, a plaintiff must allege : (1) "adverse treatment of individuals compared with other similar situated individuals," and (2) that "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 474 (2d Cir. 2008) (quoting *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)). An individual is "similarly situated" when she is "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. Cty. of Suffolk*, 316 F. 3d 368, 279 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *see also Johnson v. New York Univ.*, 2018 WL 3966703, at *7 (S.D.N.Y. Aug. 20, 2018) (quoting the same).

As Defendants correctly point out in their Memorandum in Support, with regards to disparate treatment in a land use application, a plaintiff must "plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged." *Amed v. Vill. of Old Brookville*, 2013 WL 527772, at *6 (E.D.N.Y. Feb. 7, 2013) (citing *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir.

2010); *see also Manbeck v. Micka*, 640 F. Supp. 2d 351, 399 (S.D.N.Y. 2009) (granting summary judgment on an equal protection claim where plaintiff failed to offer evidence of similarly situated persons because the alleged comparators were not seeking the same type of permit).

      b. The Motion to Dismiss Plaintiffs' Disparate Treatment Claim is Granted

The only similarly situated application that Plaintiffs proffer in the Complaint as a comparator is the 2016 Subdivision Application that was submitted by MB and MH. Plaintiffs have somehow overlooked an insurmountable distinction between these applications; namely, that Plaintiffs' applications are site plan applications, whereas MB and MH's application is a subdivision application. (*See, e.g.*, Compl. ¶¶ 48 (stating that Plaintiffs' withdrew their 2013 subdivision application), 49 (describing Plaintiffs' 2013 Site Plan Application), 53 (describing Plaintiffs' 2016 Site Plan Application), 71 (describing MB and MH's 2016 Subdivision Application).) In other words, these applications are not similarly situated. As Plaintiffs have failed to set forth any similarly situated applicants, the Court need not analyze whether the alleged selective treatment was based on impermissible considerations. Accordingly, Plaintiffs' disparate treatment claim is dismissed.

As the Court has hereby dismissed all of Plaintiffs' claims, the Court will not consider Defendants' argument that all claims against Defendants Donald Louchheim, Lee Foster, William Barbour, Lisa Duryea Thayer, and Joy Seiger in their individual and official capacities should be dismissed as either redundant or protected by qualified immunity.

   IV. *Proposed Intervenor Defendants' Motion to Intervene and Dismiss is Denied*

Given that this case is now dismissed in its entirety, the Proposed Intervenor Defendants' motion to intervene and dismiss is denied as moot.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is granted as to all claims, and the case is dismissed. Proposed Intervenor Defendants' motion to intervene and dismiss is denied as moot. The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**
Dated: Central Islip, New York
September 6, 2018

/s/
Denis R. Hurley
Unites States District Judge